**HOT SPRINGS INDEPENDENT SCHOOL DISTRICT NO. 10, Plaintiff and Respondent,**

**and**

**The Board of Equalization of the State of South Dakota, Defendent,**

**v.**

**The FALL RIVER LANDOWNERS ASSOCIATION, Joseph Trotter, President, and John (Joel) Rickenback, Secretary, and the County of Fall River, State of South Dakota, Defendants and Appellants.**

**Nos. 11891 and 11976.**

Supreme Court of South Dakota.

Jan. 25, 1978.

Norman K. Blatchford, Hot Springs, for Hot Springs Independent School Dist. No. 10, plaintiff and respondent.

Horace R. Jackson of Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, for Fall River Landowners Ass'n, defendant and appellant.

Roland E. Grosshans, Hot Springs, for County of Fall River, defendant and appellant.

MORGAN, Justice.

By this appeal we are asked to affirm the actions of the Fall River County Commissioners sitting as a board of equalization in response to a petition of a number of landowners whereby the board rejected the 1973 assessment roll as proposed by the county director of equalization, directed him to reassess all agricultural lands as provided by statutory directive, and rolled back the assessed valuation of agricultural property to the 1970 valuations.

The school district appealed the action of the county board to the state board of equalization where, after hearing the state board affirmed by a split vote. The school district then appealed to circuit court at which point the landowners' association was permitted to intervene. The case was submitted to the circuit court on a stipulated record as to what the various proposed witnesses would testify to, but did not stipulate the testimony as fact. The trial court reversed the actions of the county board and directed reinstatement of the assessment rolls from which judgment this appeal is taken. We affirm the trial court.

The primary issue is whether the 1973 assessment roll was prepared in conformity to the statutory authority and directives, particularly the provisions of SDCL 10–6–33.1 to 10–6–33.4, inclusive. The appellant contends that they were not, inasmuch as the stipulated evidence shows that the director considered sales (albeit sales of agricultural land for use as agricultural land), whereas the legislative intent was that agricultural land in South Dakota be assessed at a value based solely on capitalization of the net return derived from the operation of the land for agricultural purposes and, excluding sales statistics, the trial court held that the director of equalization had complied with the statutory directive although the stipulated evidence showed that he had used comparable sales as a factor.

Since 1931, by constitutional fiat, the legislature has, for the purposes of school taxation, classified all property within school districts into two separate classes, to-wit: agricultural property and nonagricultural property. Agricultural property is defined in SDCL 10–6–31 as "all property used exclusively for agricultural purposes which is not handled for resale by wholesale or retail dealers. It includes all land used exclusively for agricultural purposes, both tilled and untilled, * * *." Similar legislation has been passed in a number of our sister states indicating a legislative intent to ameliorate the plight of the operator on agricultural land due to rising property taxes in recent decades. The increases in the level of property taxation are considered inequitable from the farmers' viewpoint because they usually stem from increased demands for schools and compared to suburban interests, agricultural interests benefit little from schools and contribute little to the demand for them.[1]

■ We first consider this court's scope of review in an appeal from the decision of a trial court in a trial de novo of an assessment matter. In the case of *Yadco, Inc. v. Yankton County*, S.D., 237 N.W.2d 665 (1975) we applied the "clearly erroneous" rule. We hold however that this rule is nonapplicable in this case; for while the case was not submitted to the trial court on a stipulation of fact, it was submitted to the court on a stipulation of what the various witnesses would testify to. Therefore, the trial court, not having heard the witnesses testify nor having been able to determine their demeanor, we can read the stipulation and review the propounded evidence in the same light as though first presented to us.

---

1. Wagenseil, Property Taxation of Agricultural and Open Spaced Land, Harvard Journal on Legislation, Vol. 8, pp. 158, 159.

In *Williams, et al. v. Stanley County Board of Equalization*, 69 S.D. 118, 7 N.W.2d 148 (1942), this court held that the decision of the board of equalization was quasi-judicial and as such was appealable under 39 SDC 12.0618 and 12.0620. This court went on to state that in these cases the issue to be tried in the circuit court "de novo" are the issues presented by the record of the board and passed on by it. The powers of the court in such cases are the same as those possessed by the board.

Two provisions in the South Dakota Constitution are basic to our determination of the interpretation of the statutes in question. Article XI, § 2, provides that:

[T]he Legislature is empowered to divide all property * * * into classes and to determine what class or classes of property shall be subject to taxation and what property, if any, shall not be subject to taxation. * * * the valuation of property for taxation purposes shall never exceed the actual value thereof. * *

This is read in conjunction with Article VIII, § 15, which provides:

The Legislature is empowered to classify properties within school districts for purposes of school taxation, and may constitute agricultural property a separate class. Taxes shall be uniform on all property in the same class.

SDCL 10–6–31 provides that:

"For the purposes of school taxation, all property within independent school districts is hereby classified into two separate classes, to wit:

(1) Agricultural property;

(2) Nonagricultural property."

Section 10–6–31.1 further provides that: "Land devoted to agricultural use shall be classified and taxed as agricultural land without regard to the zoning classification which it may be given; * * *."

SDCL 10–6–33 provides that:

"All property shall be assessed at its true and full value in money but only sixty per cent [2] of such assessed value shall be taken and considered as the taxable value of such property upon which the levy shall be made and applied and the taxes computed."

SDCL 10–6–33.1 then provides:

In fixing the true and full value in money of property, under the provisions of § 10–6–33, the value of agricultural land as defined by § 10–6–31, and which has been used primarily for agriculture use for at least five successive years immediately preceding the tax year for which assessment is to be made shall be based on consideration of the following factors:

(1) The capacity of the land to produce agricultural products as defined in § 10–6–33.2;

(2) Soil, terrain and topographical condition of the property;

(3) The present market value of said property as agricultural land; [3]

(4) The character of the area of place in which said property is located; and

(5) Such other agricultural factors as may from time to time become applicable.

SDCL 10–6–33.2 then goes on to define how the determination of the capacity to produce shall be made, referring the county director or board to determinations of carrying capacity as determined by the soil conservation service, ASCS, extension service, Federal Land Bank and private lending agencies.

■ In reviewing a case requiring statutory construction we must of course consider all of the statutes and construe them so as to give the maximum effect to all provisions where possible. In so doing, we are cognizant of the fact that the people of this state in 1930 recognizing the necessity for giving the agricultural industry some relief with respect to the valuations of its

---

**2.** The 1977 amendment which changed the maximum percentage is not pertinent to this discussion.

**3.** In 1975 the legislature amended (3) above to provide that the present market value is to be determined by the factors contained in subdivisions (1), (2), (4) and (5).

lands, land being the principal asset in an agricultural operation and at the same time real property taxes being the principal source of income to school district operations by constitutional amendment, adopted the portion of Article VIII, § 15, cited above. In consequence of this amendment the 1931 Legislature did classify agriculture and nonagricultural properties as indicated in SDCL 10–6–31 above, and defined agricultural property as including all property used exclusively for agricultural purposes, both tilled and untilled, the improvements on such land, other than buildings and structures, and the livestock and machinery located and used on such agricultural land. In *Great Northern Ry. Co. v. Whitfield*, 65 S.D. 173, 272 N.W. 787 (1937) this Court approved such a legislative action.

In 1970 the legislature adopted the formula, now codified as SDCL 10–6–33.1, as amplified by SDCL 10–6–33.2, to provide a method for determining the full and true value referred to in SDCL 10–6–33, where the land has been used for agricultural use for at least five successive years immediately preceding the tax year.

██ The appellant contends strenuously that by adoption of this formula the only method by which full and true value of agricultural land can be determined is by capitalization of return on the land and that any consideration of value based on sales, even of agricultural land for agricultural purposes is in violation of the legislative formula. With this contention we cannot agree. For had that been the legislative intent it obviously would have been far simpler to enact a law so stating rather than the complicated formula that they did. To hold otherwise would be to say that the first factor, capacity to produce, is the sole criterion to the exclusion of the other four, including factor (3) which is the present market value of said property as agricultural land. Furthermore, if the legislature had intended that capitalization of return be the sole criteria, there would surely have to be

some legislative direction as to rate of capitalization, the period over which it is to be computed, and other factors to be considered.

Reviewing the stipulated evidence it appears to us that the county assessor did in fact apply all of the formula factors in arriving at his valuation of agricultural lands in Fall River County with one possible exception. The stipulation notes that he did not take into consideration the location of the land as being near to or farther from market, which presumably would have some reflection on factor (4), "the character of the area of place in which said property is located; * * *." However, there is no evidence that this was prejudicial to any of the parties. Since the record further discloses that various taxpayers were called in and helped classify their own land with regard to "productivity, etc.,"[4] appellants cannot say that factor (4) was not taken into consideration.

While we hold that the counsel for appellant is in error in his interpretation of the statute, we would be remiss if we did not comment on the evidence he adduced in support of his eloquent argument in favor of capitalization.

His evidence consisted of three models intended to show the net return on land used for cow-calf operation, for winter wheat production, and irrigated land used for corn production, each of which demonstrated that after allowing the taxpayer certain expenses necessarily incurred in each operation, plus the return of 8% on his investment, he was left with a net loss. We are unaware of and appellant fails to cite any statutory authority that grants the taxpayer an 8% return on investment. Such a guaranty is certainly not part of the formula enacted by the legislature. Furthermore, why should a guaranteed return of investment in other assets and expenses be preferred over the return of the investment in the land. We are cognizant that this court in *Great Northern Ry. Co. v. Whitfield,*

---

4. Fall River County Director of Equalization's testimony before the State Board of Equalization.

supra, stated that a state may adjust its tax system to meet its necessities in all proper and reasonable ways. School taxes in South Dakota are a necessity and this state under its compact with the United States as expressed in paragraph 4 of Article XXII of the State Constitution has obligated itself as follows: "That provision shall be made for the establishment and maintenance of systems of public schools, which shall be open to all the children of this state, . ." Any statutory enactment which would in effect absolutely absolve all agricultural lands from any school taxes should be spelled out and contain sufficient direction to the taxing authorities to set up a capitalization procedure.

In support of his argument, counsel for the appellant further urges upon us the legislative intent purportedly indicated by the enactment of House Concurrent Resolution No. 527 in 1972, which states in essence:

WHEREAS SDCL 10–6–33.1 through 10–6–33.4, inclusive, directs that agricultural land shall be assessed for tax purposes on the basis of the capacity of land in agricultural use to produce agricultural products under natural conditions including the average acres per animal unit:

NOW, THEREFORE, BE IT RESOLVED, by the House of Representatives of the Forty-seventh Legislature of the state of South Dakota, the Senate concurring therein, respectfully requests the Governor of South Dakota to issue such executive orders as may be appropriate and necessary to the Department of Revenue that directs the full legislative intent, implementation, and administration of assessing agricultural land as specified in SDCL 10–6–33.1 through 10–6–33.4 inclusive.

This resolution was adopted by the House on February 9, 1972 and was concurred in by the Senate on February 11, 1972. The 1975 Legislature amended SDCL 10–6–33.1(3) to read: "The present market value of said property as agricultural land as determined by the <u>factors contained in subdivi-</u> <u>sions (1), (2), (4) and (5) of this section;</u> * * *."[5] The appellant urges this amendment as further evidence of legislative intent that agricultural valuation shall be based solely on capitalization of return.

We therefore consider what effect a subsequent amendment and/or resolution by the legislature will have upon the court's interpretation of the original statute.

The general rule as stated in 73 Am. Jur.2d Statutes § 178 indicates that the courts regard it as proper to take into consideration in determining the meaning of a statute, subsequent action of the legislature, or the interpretation which the legislature subsequently places upon the statute. There are no principles of construction which prevent the utilization by the courts of subsequent enactments or amendments as an aid in arriving at the correct meaning of a statute.

However, it is well established under South Dakota Law that the legislative interpretation of a statute through the adoption of a subsequent amendment is not binding on this court, though the court may deem it worthy of consideration in construing the law. *Belau v. Buss*, 48 S.D. 595, 600, 205 N.W. 669 (1925). *Straub v. Lyman Land & Investment Co.*, 30 S.D. 310, 320, 138 N.W. 957, 959 (1912).

In *Straub v. Lyman Land & Investment Co., supra*, the legislature had passed an amendment providing for service either "within or without the state" to an officer which allegedly corrected an insufficiency in the original statute. The appellant urged that this enactment was a legislative recognition of the insufficiency of the existing statute to authorize such service. However, the Court stated:

"A legislative declaration as to the construction to be given a previous statute is not *conclusive* or *binding* on the courts. The amendment, however, may be regarded as an express legislative adoption of the principle announced in this decision as to what constitutes due process of law." (Emphasis added).

---

5. The amended portion thereof being underlined herein for the purpose of illustration only.

In the case of *In re Dwyer*, 49 S.D. 350, 354, 207 N.W. 210 (1926) the Court recognized the principle that where the wording of an act is changed by amendment, it is evidence of an intent that the words shall have a different construction. This case differs from the two cases above and the present action however, in that the amendment occurred before action was commenced and there was no need to interpret the original statute.

This court in *Olson v. Pulaski Common School District*, 77 S.D. 416, 92 N.W.2d 678 (1958), stated that if the court does consider a subsequent amendment, the court must decide whether the purpose of the amendment was for clarification or whether the amendment altered the law. To determine this, the Court looked at the time and circumstances surrounding the enactment of an amendment which would indicate that the change resulting from the amendment was only formal—that the legislature intended to interpret the original act. If this is the case, the court will use the subsequent amendment in determining what the existing law meant.[6] This viewpoint is supported by other jurisdictions.[7]

■ In regards to the House Concurrent Resolution No. 527, the court again may give it consideration, but is in no way bound to follow its dictates. Under *Des Moines Ind. Common School District v. Armstrong*, 250 Iowa 634, 95 N.W.2d 515, 521 (1959), the court stated that it was not bound by the construction one legislature may put upon the acts of a previous session:

The interpretation of an existing statute is a judicial, not a legislative function. The legislative intent that is controlling in the construction of a statute has reference to the legislature which enacted it, not a subsequent one. *Armstrong, supra*, at 521.

■ It would seem that the court has broad discretion in determining to what extent they must look to subsequent amendments of the statute they are interpreting. There is no question that the court is not bound by any subsequent legislative acts. If the court does want to recognize an amendment, a determination must be made as to whether the amendment clarifies the pre-existing statute or whether it alters the law.

■ Concerning the house resolution, the legislature has no power to direct the judiciary in the interpretation of existing statutes, since the legislative intent that controls is the construction of a statute which has reference to the legislature which enacted the act. (73 Am.Jur.2d Statutes § 178). Therefore, this Court if it so desires, can ignore the resolution since a different legislative session formulated its intent.

Furthermore, contrary to appellant's argument we do not find that the 1975 amendment indicates a legislative intent to remove from consideration market value inasmuch as a review of the history of that enactment discloses that the original bill as introduced as House Bill No. 662 provided for the repeal of the subsection (3) which, on its face, would have indicated a clear legislative intent to remove market value from the factors to be considered, but the legislature amended the enactment by striking the provision for repealer and substituting the amendment as finally enacted.

We therefore hold that the trial court did not err in finding that the county director of equalization of Fall River County substantially complied with the legislative directives in the preparation of the 1972 assessment rolls for Fall River County, and that the county commissioners acting as a board of equalization erred in rejecting the same.

■ We turn next to the propriety of the action of the county commissioners of Fall River County, acting as a board of equalization, in responding to the petition of the

---

6. *Olson*, supra, at 419, 92 N.W.2d 678.

7. *Dye v. Markey*, 259 Iowa 1045, 147 N.W.2d 42 (1966); *Consolidated Freightways Corp. of*

*Delaware v. Nicholas*, 258 Iowa 115, 137 N.W.2d 900 (1965).

landowners' association by rejecting the 1973 assessment roll as prepared by the director of equalization and rolling back the assessment valuations to the 1970 valuations. Under the provisions of SDCL 10–11–13 the local board of equalization is directed "to examine, ascertain, and see that all taxable property * * * has been properly placed upon the assessment roll and has been duly valued by the assessor." Since the bulk of the agricultural land in Fall River County is situated in unorganized townships, this duty would devolve upon the county board. Based upon this authority conferred by statute we hold that the board would have had authority to act as it did had the county director of equalization failed to properly place upon the assessment rolls and duly value the land. However, in view of our determination that the property was duly valued, we affirm the holding of the trial court that the action of the board was null and void; though, not for the reason stated in the trial court's conclusion.

All the Justices concur.