Clarence MORTENSON and Marlin Scarborough, Plaintiffs and Appellants,

v.

STANLEY COUNTY, Stanley County Board of Equalization and South Dakota Board of Equalization, Defendants and Appellees.

No. 12933.

Supreme Court of South Dakota.

Argued Sept. 8, 1980.

Decided March 11, 1981.

---

**108**

Harold H. Deering, Jr., of May, Adam, Gerdes & Thompson, Pierre, for plaintiffs and appellants.

Douglas E. Kludt, Stanley County Deputy State's Atty., Fort Pierre, for defendants and appellees; Bernard E. Duffy, Stanley County State's Atty., Fort Pierre, on the brief.

WOLLMAN, Chief Justice.

Plaintiffs, the owners of certain agricultural property in Stanley County, made timely objection to the 1977 assessments on their land. The Stanley County Board of Equalization refused to make any adjustments in the assessed valuations, however.[1]

Plaintiffs appealed to the State Board of Equalization, which reduced the valuation of plaintiffs' land by five percent because of lack of rainfall. The State Board refused any further relief, however, and plaintiffs appealed to the circuit court pursuant

---

1. Shortly thereafter, the Stanley County Board of Equalization reduced the valuations for all agricultural lands in the county by thirty percent.

to SDCL 10–11–43. After a trial de novo, the circuit court entered judgment denying plaintiffs relief. This appeal followed. We affirm.

Plaintiffs contend that the county assessor failed to consider or improperly considered several factors in determining the true and full value of their land. These factors include: (1) the distance of the property from the market place; (2) the presence of numerous wet spots on the property; (3) the irregular shape of certain tracts valued as cropland; (4) the isolated nature of certain tracts valued according to the crop rating; (5) the potential for erosion on certain lands rated as cropland; and (6) the lower yield potential of certain sandy soils unique to the alluvial character of plaintiffs' soil. Plaintiffs also contend that the assessment is discriminatory because of the unique nature of some of their land and that their property is assessed at more than its actual value because of the actual use to which the property is being put.

All property is to be assessed at its true and full value in money.[2] SDCL 10–6–33. The South Dakota Legislature has specifically enumerated the factors to be used in determining the value of agricultural land. SDCL 10–6–33.1 provides:

> In fixing the true and full value in money of property, under the provisions of § 10–6–33, the value of agricultural land as defined by § 10–6–31, and which has been used primarily for agriculture use for at least five successive years immediately preceding the tax year for which assessment is to be made shall be based on consideration of the following factors:

> (1) The capacity of the land to produce agricultural products as defined in § 10–6–33.2;[3]

> (2) Soil, terrain, and topographical condition of property;

> (3) The present market value of said property as agricultural land as determined by the factors contained in subdivisions (1), (2), (4) and (5) of this section;

> (4) The character of the area of place in which said property is located; and

> (5) Such other agricultural factors as may from time to time become applicable.

We have held that in determining true value comparable sales of agricultural lands used for agricultural purposes may be considered. *County of Butte v. South Dakota State Board of Equalization*, 263 N.W.2d 140 (S.D.1978); *Hot Springs Ind. School Dist. No. 10 v. Fall River Landowners*, 262 N.W.2d 33 (S.D.1978).

Roger Fuller, Director of Equalization and assessor for Stanley County, used comparable sales and a soil survey in determining the assessed valuation of plaintiffs' land. Fuller and a South Dakota Department of Revenue employee gathered bare land sales in Stanley County for a three-year period. They then eliminated any sales that were not comparable, such as a sale that included a lease on other land. There were approximately fifteen different reasons why a particular sale might be eliminated. After eliminating the sales that were not comparable, they arrived at a median figure that they considered to be a fair market value figure for an average acre. At that point Fuller met with assessors of other counties to compare the medi-

---

2. "True and full value" is defined as "the usual cash selling price at the place where the property to which the term is applied shall be at the time of the assessment." SDCL 10–6–1.

3. SDCL 10–6–33.2 provides:
   Capacity of land in agricultural use to produce agricultural products shall be based on average yields under natural conditions, in the case of land producing crops or plants, and on the average "acres per animal unit," in the case of grazing land; said average shall affect each operating unit and shall be based on the ten-year period immediately preceding the tax year in issue. In determining such capacity to produce, the county director of equalization and/or the county board of equalization must take into consideration yields, and/or carrying capacity, as determined by the soil conservation service, the agricultural stabilization and conservation service, the extension service, federal land bank and private lending agencies dealing with land production capacities.

an sales prices for equalization purposes. After reducing the $100 median sales figure to $83 for equalization purposes, the latter figure was submitted to the State Department of Revenue, which valued each type of land in Stanley County according to its rating.

These ratings are based on a soil survey that was conducted by the Soil Conservation Service. This soil survey included a systematic examination of the different soils throughout the county as well as analysis of the appropriate yield data, and the description, classification and mapping of these soils. The Soil Conservation Service then utilized a land capability classification system. Land suitable for crops would also be given a cropland rating whereas land not suitable for crops would, in Stanley County, be given a rangeland rating.

Fuller then utilized Department of Revenue figures stating how much each type of land was worth and applied those figures to the descriptions and soil survey maps of every taxable acre in Stanley County.

## I

The first issue raised by plaintiffs is that their evidence regarding the factors reducing the value of their land was sufficient to overcome the presumption that the Stanley County Director of Equalization's valuation was correct.

On appeal, plaintiffs originally conceded that there was a presumption that the Director of Equalization's valuation was correct. In their reply brief, however, plaintiffs contend that the presumption is not applicable where the Director of Equalization has not actually viewed the property assessed and valued but rather relies on values given to him by others, citing *In re Jepsen's Appeal*, 76 S.D. 421, 80 N.W.2d 76 (1956). Although the Director of Equalization did not actually view the property in question until after appeal was taken to the Stanley County Board of Equalization, *Jepsen's Appeal* is distinguishable and is not controlling here. In *Jepsen's Appeal* there was no qualified assessor, and those purporting to act as assessor never viewed the property but merely accepted the appraisal of a private consulting company. In the case at bar plaintiffs do not contend that the Director of Equalization was not a qualified assessor or that he merely accepted the valuations of a private consulting company.

■ Accordingly, there is a presumption that the Stanley County Director of Equalization's valuation was correct. *Knodel v. Bd. of County Com'rs*, 269 N.W.2d 386 (S.D.1978); *Yadco, Inc. v. Yankton County*, 89 S.D. 651, 237 N.W.2d 665 (1975). Moreover, our scope of review of a trial court's decision in a trial de novo of a tax assessment matter is to determine whether the trial court's findings were clearly erroneous. *Knodel v. Bd. of County Com'rs, supra; Willow, Inc. v. Yankton County*, 89 S.D. 643, 237 N.W.2d 660 (1975); *Yadco, Inc. v. Yankton County, supra.*

Before addressing the specific factors enumerated by plaintiffs, we note that although plaintiffs' expert testified regarding the factors to be used in valuation of agricultural land, he gave no opinion regarding the full and true value of plaintiffs' land, nor did he ever disagree or agree with the Director of Equalization's valuation. Plaintiffs were qualified to testify regarding the assessments involved, but the weight to be accorded such testimony is for the trier of fact. *Hannahs v. Noah*, 83 S.D. 296, 158 N.W.2d 678 (1968); *Rau v. Fritz*, 81 S.D. 311, 134 N.W.2d 773 (1965).

Plaintiffs seek a reduction in their overall assessed valuation because of the distance of their respective ranches from the market. Plaintiff Mortenson seeks a ten percent reduction in valuation while plaintiff Scarborough seeks a nine percent reduction in valuation. Both plaintiffs testified that Fort Pierre-Pierre, which is sixty-five and seventy miles from their respective ranches, is their predominant market, trading center and social center. They testified that this distance increases marketing and production costs. Plaintiffs' expert testified that distance detracts from market value but that there is no set rate of reduction.

The circuit court agreed with plaintiffs that the distance to the market place caused them more expense than landowners living next to town, but found that plaintiffs had not supplied any evidence from which the court could hold that the present market value of plaintiffs' property was altered by such distance.

This Court has noted that the location of property is an element bearing upon the market value of that property. *Rau v. Fritz, supra.* Likewise, the Supreme Court of Kentucky has held that some farm property may be more desirable than other farm property because it is closer to good schools or to communities offering greater social and cultural advantages or is more accessible to utility services, and that these are factors that bear upon the value of property for agricultural purposes. *Kentucky Bd. of Tax Appeals v. Gess*, 534 S.W.2d 247 (Ky. 1976).

In the case at bar, the Stanley County Director of Equalization considered this factor and determined that distance from market had no appreciable effect on market value in Stanley County. Furthermore, there was no foundational evidence given at trial to support the requested ten and nine percent reductions. Plaintiffs asked the circuit court to accept the reduction requests without an adequate explanation of how they were determined and without adequate evidence to support their contention. Additionally, defendants' expert, Roger Schroeder, the Tripp County Director of Equalization, testified that he has never been able to find any evidence indicating that distance from market affects the market value of property and was not aware of any studies that had established that distance to market affects value. Another of defendants' witnesses, Donald Miller, a South Dakota State Department of Revenue employee, testified that after analyzing more than 20,000 agricultural land sales in South Dakota, he could find no consistent indication that distance to market affects

the selling price of agricultural land for agricultural uses. Accordingly, we cannot say that the decision of the circuit court in refusing to reduce the valuation of plaintiffs' land due to distance to market was clearly erroneous. The evidence introduced by plaintiffs was not sufficient to overcome the presumption that the Director of Equalization's valuation was correct.

Plaintiffs also contend that the valuation of their property should be reduced due to the presence of numerous wet spots, the irregular shape of certain tracts valued as cropland, the isolated nature of certain tracts valued as cropland, and the potential for erosion on certain land rated as cropland. In summary, plaintiffs contend that part of their land is rated as cropland but that it is not used as such and instead is used as rangeland. Therefore, plaintiffs contend, the assessed valuation of this land should be reduced to that for rangeland.

Initially, we note that the mere fact that these factors exist in varying degrees throughout Stanley County has no affect on the question whether the assessed valuation of this property exceeds the actual value. Nevertheless, that these factors exist countywide implies that the comparable sales used by the Director of Equalization must also have included land that had some of these characteristics. These comparable sales were then used in determining the valuation of plaintiffs' land.

Although plaintiffs contend that most of the property containing one or more of these four factors is not being used as cropland, similar property in Stanley County is being used as cropland. The decision whether or not to farm such property can be termed a management decision. Although actual use may be a factor in determining the valuation of certain property, a landowner should not be able to determine the valuation of property by using it as rangeland when it could be used as cropland.[4]

---

4. The Director of Equalization did make use of some of these four factors in changing the rating to rangeland on any tract where less

than thirty acres per quarter of land was classified as crop-rated soil. With regard to the contention about soil erosion, the soil survey

The final factor that plaintiffs claim reduces the valuation of their land is the lower yield potential of certain sandy soils unique to the alluvial character of plaintiffs' soil. On the basis of actual observation, plaintiffs testified that Ree soils present on part of their land produce three-fourths the yield of Promise soils, even though Ree soil types are consistently rated higher. Plaintiffs testified that this type of soil is not found countywide and does not retain moisture as well as other soil types.

Nevertheless, we cannot say that the circuit court's decision to refuse to reduce the valuation due to this unique type of soil was clearly erroneous. There was evidence that the soil survey that rated Ree soils higher was based on actual yield data using long-term averages. Second, the State Board of Equalization has already adjusted the valuation due to lack of rainfall, which would take into account that Ree soils do not retain moisture as well as other soil types.

## II

The second issue raised by plaintiffs is that the findings of fact entered by the trial court are not sufficient to support the conclusion of law that the Director of Equalization substantially complied with his statutory duties in assessing their property. Plaintiffs concede that substantial compliance with the legislative directives on valuation of agricultural property is sufficient to uphold such valuation, *Knodel v. Bd. of County Com'rs, supra.* Plaintiffs contend that the assessor did not consider the various factors raised by plaintiffs until after the county had denied them relief. They contend that the only evidence of compliance was the use of bare land sales data and the use of the soil survey.

We conclude that the circuit court did not err in finding that the use of the soil survey and the comparable bare land sales were sufficient to constitute substan-

tial compliance. The Director of Equalization used comparative sales data, which this Court has held may be used in determining true value. *Hot Springs Ind. School Dist. No. 10 v. Fall River Landowners, supra.* The soil survey takes into account the capacity of the land to produce agricultural products and the soil, terrain, and topographical condition of the property, both of which are factors to be considered under SDCL 10–6–33.1. The Director of Equalization also testified that he did consider the factors enumerated by plaintiffs.

Additionally, there was no showing that the assessed valuation of plaintiffs' land exceeded the actual value of the land. On the contrary, there was evidence that the assessed value was less than the actual value. An expert called by defendants used lease figures provided by plaintiffs' expert and after correlating the monetary value of a lease to the sale value of property covered by such lease, determined that the valuations of plaintiffs' lands were not in excess of market value.

The judgment is affirmed.

All the Justices concur.

---

takes into account the slope of land as well as other factors in determining whether land is cropland or rangeland.