1996 SD 13

LINCOLN TOWNSHIP and Wilbert A. Tubbs, Appellees,

v.

SOUTH DAKOTA BOARD OF EQUALIZATION and Ronald J. Schreiner, Secretary, and Perkins County Board Of Equalization, Appellants.

No. 19145.

Supreme Court of South Dakota.

Considered on Briefs Nov. 28, 1995.

Decided Feb. 7, 1996.

T.L. Secrest, Hettinger, for appellees.

Mark Barnett, Attorney General, David D. Wiest, Assistant Attorney General, Pierre, Curtis W. Hanks, Perkins County State's Attorney, Lemmon, for appellants.

SABERS, Justice.

[¶ 1] The South Dakota Board of Equalization (State Board) and the Perkins County Board of Equalization (County Board) appeal from a determination that certain agricultural property was overassessed.

## FACTS

[¶ 2] Wilbert Tubbs owns property in Lincoln Township which is located in the northeastern part of Perkins County in northwestern South Dakota.

[¶ 3] In 1993, Jerald Seidel, Perkins County Director of Equalization, reviewed the 1991 and 1992 agricultural land sales in Perkins County, and compared their "sales ratios" (assessed value divided by sale price). Seidel used comparable sales to determine these sales ratios. The sales ratio in one area of the county was 62.7 percent and in another area it was 92.4 percent. This means that some land was being assessed at 62.7 percent of its sale price, while land in another area was assessed at 92.4 percent of sale price. He concluded some of the property was underassessed. Seidel divided the county into four zones. Lincoln Township, including Tubbs' property, is in zone one. Seidel raised all assessed values of agricultural land in zone one by ten percent in 1993.[1]

[¶ 4] Lincoln Township and Tubbs appealed the increase to the State Board, which affirmed. They appealed to the Circuit Court, which found that the assessments violated the "neighborhooding" statute, SDCL

1. The assessed values within zone three were raised 15% but the assessed values within zones two and four were not changed. None of those assessments are appealed here.

2. SDCL 10-6-33.6, the "neighborhooding" statute provides:

10-6-33.6.[2] The trial court also found that at least seven tracts of agricultural land in Lincoln Township were overassessed because they were used as rangeland not cropland. It held the seven tracts should be assessed as rangeland unless actively used as cropland. The trial court lowered the assessment value to pre-1993 levels for all of "zone one" of Perkins County. The State Board and the County Board appeal.

[¶ 5] There are two presumptions favoring the valuations of tax officials:

First, there is a presumption that tax officials will do their duty in accordance with the law and not act unfairly and arbitrarily regarding the assessment of property. Second, there is a presumption that the county director of equalization's valuations are correct.

*Hutchinson County v. Fischer,* 393 N.W.2d 778, 782 (S.D.1986) (citations omitted).

[¶ 6] **1. Did the Director of Equalization Comply with SDCL 10-6-33.6?**

[¶ 7] The trial court determined Seidel did not comply with the South Dakota "neighborhooding" statute when raising land values because he "failed to show a separate market value per acre for the valuation made by increasing the values ten percent." The trial court stated that use of comparable sales to determine a separate market value is required by *Telkamp v. S.D. State Board of Equal.,* 515 N.W.2d 689 (S.D.1994). *Telkamp* held property could not be assessed above its "true and full value" as determined through comparative sales but did not hold that SDCL 10-6-33.6 required county directors of equalization to determine a separate market value by comparative sales. The statute does not require it either. The statute simply provides that the "director of equalization may *establish* a separate market value per acre." SDCL 10-6-33.6 (emphasis added).

If the median value per acre in an identifiable region within a county deviates by more than ten percent from the county average, the county director of equalization may establish a separate market value per acre for the land defined by the director of equalization within that region.

[¶ 8] Seidel testified he studied 1991 and 1992 sales ratios and discovered he had underassessed some areas of the county, so he drew zones. He used comparative sales to determine sales ratios and zones. Perkins County has different geological formations which affect the quality of agricultural land. A soil scientist testified Seidel's zones generally followed those geological patterns.

[¶ 9] The Board claims Seidel complied with the "neighborhooding" statute because the median sales value in zone one was $124.71 per acre and the median sales value of the entire county was $110.00 per acre. This was a deviation of more than 10 percent. The Board states:

> A simple application of the addition of 10 percent to the county median of $110.00 yields $121.00 per acre, the separate market value utilized by Seidel. This is very, very close to the Zone 1 median of $124.71.

There are two minor problems with this interpretation. First, Seidel's testimony does not indicate he determined the 10 percent assessment increase in that manner.

[¶ 10] Seidel testified he compared the sales ratios in each zone with the county sales ratio and discovered a difference of more than ten percent. The sales ratio in zone one was 62.7 percent (meaning land was assessed at 62.7% of its selling price), and the sales ratio for the county was 73.2 percent. The statute provides the ten percent deviation must be in the "median value per acre." It is immaterial here, however, because the median values per acre between zone one and the entire county did vary by 10 percent as required by the statute. In fact, the county median sales value was $110.00, while the zone one sales value was $124.71.

[¶ 11] Second, the Board's market value of $121.00 is not entirely consistent with Seidel's calculations. Seidel's adjustments were to the *assessed* value per acre, not to the sale price.

[¶ 12] The memorandum opinion stated Seidel used a "weighted average of $97.00

per acre for 1991 and 1992 sales." However, Seidel did not testify he used a "weighted average of $97.00" to make his adjustments. Rather, his worksheets show he increased the assessed value of the "number one" soil in the county to $198 per acre. This was a ten percent increase from the prior assessment of $180. All other values were raised accordingly.[3]

[¶ 13] The trial court's holding that Seidel did not comply with SDCL 10-6-33.6 is incorrect. The statute allows Seidel to "establish a separate market value per acre," and he established a market value of $198 per acre for "number one" soil. We therefore reverse the trial court's holding.

## [¶ 14] 2. Does Current Use of the Property Control Valuation?

[¶ 15] Seidel based his determination that agricultural land was cropland or rangeland on the soil survey, which rates the soils as either range or crop, based on the productivity of that particular soil. Lincoln Township and Tubbs argue some of the tracts have been used as rangeland for 25 or more years and should not be labeled cropland because of revenue potential.

[¶ 16] The Board argues landowners cannot control market value by altering use. "The decision whether or not to farm such property can be termed a management decision. Although actual use may be a factor in determining the valuation of certain property, a landowner should not be able to determine the valuation of property by using it as rangeland when it could be used as cropland." *Mortenson v. Stanley County,* 303 N.W.2d 107, 111 (S.D.1981).

[¶ 17] Lincoln Township and Tubbs argue present use as rangeland affects value. They argue South Dakota law considers use of the property in determining the value of agricultural land. SDCL 10-6-33.1.

[¶ 18] The trial court found:

> That the highest and best use of the real property involved in the seven (7) tracts of real property which were overassessed

---

3. The "number one" soil is the best soil in the county. All other soils have a rating comparing their productivity to the "number one" soil. For example, a soil rated .379 (37.9% as productive as the number one soil) would now be assessed at 37.9% of $198.

would be rangeland, unless they were actively being used as cropland.

[¶ 19] While use is a *factor* in determining value of agricultural land, it is not the only factor. SDCL 10–6–33.1 provides in part:

The true and full value in money of agricultural land, as defined by § 10–6–31, which has been in primarily agricultural use for at least five successive years immediately preceding the tax year for which assessment is to be made shall be the market value as determined for each county through the use of all comparable sales of agricultural land based on consideration of the following factors:

(1) The capacity of the land to produce agricultural products as defined in § 10–6–33.2; and

(2) The soil, terrain and topographical condition of the property including but not limited to capability, the land's use, climate, accessibility and surface obstructions which can be documented through an analysis of land selling prices.

[¶ 20] Seidel's assessment method follows this statute. He depends on the soil survey to determine whether the land is cropland or rangeland, and he uses those soil ratings whether the land is used as cropland or rangeland.

[¶ 21] The trial court held the highest and best use of these tracts of land is "rangeland unless it is actively used for cropland." When Gary Geiszler, appraiser for Lincoln Township and Tubbs, was asked why he thought the assessed value of the seven tracts exceeded the market value, he responded, "I think the . . . factor that makes a difference is that these tracts are being used for pastureland while they have cropland potential." He continued, "[W]here you have a use that's other than the highest and best use, which I assume was presumed to be cropland, some of these discrepancies are going to develop." There are no facts in the record to indicate the property is not suited for use as cropland. The trial court's determination that the highest and best use of the land is "rangeland unless it is actively used for cropland" is error.

## [¶ 22] 3. Were Tracts of Land Assessed in Excess of "True and Full Value"?

[¶ 23] As indicated, the assessor's valuations are presumed correct. *Fischer*, 393 N.W.2d at 782. Lincoln Township and Tubbs argue that after the 10 percent increase, assessments exceeded the fair market value of property. They bear the burden of overcoming the presumption of correctness. *Knodel v. Bd. of County Comm'rs.*, 269 N.W.2d 386, 389 (S.D.1978).

[¶ 24] The trial court determined at least seven tracts of land in Lincoln Township were assessed in excess of their value. The trial court exercises independent judgment to determine valuation. *Fischer*, 393 N.W.2d at 782. In effect, it sits as another board of equalization with authority to determine anew the assessed valuation of the taxpayer's property. *Chicago, M., & St. Paul & P.R. Co. v. Bd. of Comm'rs of Walworth County*, 248 N.W.2d 386, 391 (S.D.1976). Value is a question of fact and the trial court's determination will only be overturned if it is clearly erroneous.

[¶ 25] The trial court's findings do not specify the manner the property was assessed in excess of its value, stating only:

Appellants' appraiser testified that the assessed value of at least seven (7) tracts of real property in Zone 1 exceeded the estimated market value in Lincoln Township, Perkins County, South Dakota.

\* \* \* \* \* \*

In at least seven (7) tracts of real property in Zone 1 of Perkins County, the assessed value as made by the Director of Equalization exceeded the market value.

Lincoln Township and Tubbs claim the trial court was correct in its decision. Appraiser Geiszler determined:

the better quality cropland acres in the township are somewhat under assessed, while the average rangeland and poorer croplands generally appear reasonable. However, *there does appear to be a dis-*

*crepancy in rangelands that have the potential to be used for cropland purposes.* (Emphasis added.)

[¶ 26] Geiszler analyzed those properties based on rangeland productivity, "a measurement of ... forage producing ability." Lincoln Township and Tubbs argue Geiszler's appraisal was correct. They claim market value of rangeland with cropland potential is affected by certain factors, including inaccessibility, and qualification for government price support programs. However, they do not claim the factors exist here. They argue:

> It is absurd to believe that farmers and ranchers in South Dakota would deliberately take good cropland out of production and use the land as pasture or rangeland for 25 years merely to get their taxes lowered.

This may be true. However, the only testimony concerning overassessment came from Geiszler. He did not and could not distinguish between rangeland-rated soil or cropland-rated soil. In fact, his appraisal relied on the county's soil survey to determine rangeland productivity. He testified to factors which could affect the feasibility of cropping tracts currently used as rangeland, but did not show that any of these factors applied to any of the seven tracts. Without an appraisal showing Seidel's assessment was erroneous, Lincoln Township and Tubbs have not overcome the presumption of correctness. *See Knodel,* 269 N.W.2d at 389; *Roseland v. Faulk County Bd. of Equal.,* 474 N.W.2d 273, 275 (S.D.1991).

[¶ 27] We reverse the trial court's decision and remand to reinstate all assessments in zone one.

[¶ 28] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

