Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 
IN THE MATTER OF RICHTER ENTERPRISES, INC.
and Kenneth Barber,
Appellants,
v.
SULLY COUNTY, SOUTH DAKOTA,
Appellee.
South Dakota Supreme Court
Appeal from the Sixth Judicial Circuit, Sully County, SD
Hon. James W. Anderson, Judge
#19603 â Affirmed
Craig E. Smith, Neumayr & Smith, Gettysburg, SD
Attorneys for Appellants.
Darla Pollman Rogers, Sully County Stateâs Attorney, Onida, SD
Attorney for Appellee.
Considered on Briefs Oct 24, 1996; Opinion Filed May 28, 1997 
AMUNDSON, Justice. 
[Â¶1] Richter Enterprises, Inc. and Kenneth Barber (Taxpayer) appeal the circuit courtâs decision to affirm the Sully County Director of Equalizationâs (Director) assessment of value to two parcels of commercial property in Sully County. We affirm. 
FACTS AND PROCEDURAL HISTORY 
[Â¶2] On March 5, 1993, Taxpayer purchased two parcels of property in the City of Onida, Sully County, South Dakota. The buildings located on these parcels both share a common wall with the Onida Masonic Hall. Located in the building on the east is the ASCS office; located in the building on the west is the United States Post Office. The ASCS office has historically operated under an annual lease, which has been renewed since Taxpayer purchased the building. The Post Office has traditionally held five-year leases, and the lease has been renewed through 1999. 
[Â¶3] In early 1992, the parcels were listed for sale at a price of $110,000. In 1993, Taxpayer purchased the property for $53,750. Taxpayer admits the buildings represent a reasonable investment, and there is an intention to use the buildings for their current purpose. Taxpayer additionally stipulates that the property has a useful life of fifteen years. 
[Â¶4] Director assessed the value of the two parcels for tax purposes. In 1994, the property was initially valued at $148,651 using a âcost approachâ but, when Taxpayer protested, Director acquired actual income information and determined a value of $115,576. Taxpayer did not appeal this valuation. In 1995, Taxpayer refused to supply income data for the appraisal. Director then performed an appraisal under a âreplacement cost approach,â reaching a value of $119,424. 
[Â¶5] For the 1994 and 1995 appraisals, Director disregarded the 1993 sale price because she determined that the unique situations of two parcels separated by individual party walls and an intervening building distorted the true value. In addition, Director did not use economic obsolescence in valuing the property. 
[Â¶6] Taxpayer appealed this valuation and the circuit court affirmed. Taxpayer again appeals. We affirm. 
ISSUES 
I. Whether Taxpayer produced sufficient evidence to overcome presumption that Directorâs valuation was correct. 
II. Whether Directorâs valuation was invalid due to failure to use economic obsolescence. 
STANDARD OF REVIEW 
[Â¶7] As stated in Hutchinson County v. Fischer: 

This courtâs proper scope of review of a trial courtâs decision in a trial de novo of an assessment matter is whether the decision of the trial court was âclearly erroneous.â When applying the clearly erroneous standard, the question is not whether this court would have made the same findings that the trial court did, but whether on the entire evidence this court is left with a definite and firm conviction that a mistake has been committed. 
393 NW2d 778, 781 (SD 1986) (citations omitted). Furthermore, there is a presumption that tax officials act in accordance with the law and not arbitrarily or unfairly when assessing property. Lincoln Township v. South Dakota Bd. of Equalization, 1996 SD 13, Â¶ 5, 543 NW2d 256, 257; Hutchinson County, 393 NW2d at 782. Taxpayer also has the burden of overcoming the presumption that Directorâs value was correct. National Food Corp. v. Aurora County Bd. of Commârs, 537 NW2d 564, 568 (SD 1995); Hutchinson County, 393 NW2d at 782; Knodel v. Board of County Commârs, etc., 269 NW2d 386, 389 (SD 1978). Specifically, Taxpayer âmust produce sufficient evidence to show the assessed valuation was in excess of true and full value, lacked uniformity in the same class or was discriminatory.â Id. 
DECISION 
[Â¶8] I. Sufficiency of the Evidence. 
[Â¶9] Taxpayer claims there is sufficient evidence to demonstrate that the assessed valuation of the property is in excess of the true and full value, lacked uniformity in the same class, or is discriminatory and, therefore, violates the South Dakota Constitution, Article XI, Â§2. [fn1]  Taxpayer asserts the sale in 1993 between a willing buyer and a willing seller shows the assessed valuation is in excess of the true and full value. The assessment was for $119,424, while the sale was for $53,750. 
[Â¶10] SDCL 10-6-33 provides the basis for determining valuation for tax purposes: 

All property shall be assessed at its true and full value in money. The true and full value is the taxable value of such property upon which the levy shall be made and applied and the taxes computed. In determining the true and full value of property the director of equalization may not adopt a lower or different standard of value because it is to serve as a basis of taxation. The director may not adopt as a criterion of value the price for which the property would sell at a forced sale, or in the aggregate with all the property in the third class municipality or district. The director shall value each article or description by itself and at an amount or price as he believes the property to be fairly worth in money. The true and full value shall be determined by appropriate consideration of the cost approach, the market approach and the income approach to appraisal. The director of equalization shall consider and document all elements of such approaches that are applicable prior to a determination of true and full value. 
The record reveals that Director considered the cost approach to value the property, resulting in a valuation of $148,651. The income approach was also considered, including a new five-year lease being negotiated. The income approach resulted in a valuation of $115,576. Director disregarded the market approach due to lack of comparable sales within the county. [fn2]  Since the record discloses Director applied the cost and income approaches, and considered the market approach, she followed the required basis for determining valuation according to SDCL 10-6-33. As stated in Brookings Assocs. v. State Bd. of Equalization: ââSubstantial compliance with legislative directives is sufficient in determining assessed valuation.ââ 482 NW2d 873, 882 (SD 1992) (Wuest, J., dissenting) (quoting Knodel, 269 NW2d at 389). 
[Â¶11] Director disregarded the 1993 sale price of $53,750 because she determined the unique situation of two parcels separated by individual party walls and an intervening building distorted the true value. The circuit court held this determination was supported by the evidence, as the record reveals testimony stating that circumstances such as property with party walls, [fn3]  sales of less than the entire realty, and sales on contract for deed may prevent a sale from being a true measure of value. See, e.g., Kassnel v. Village of Rosemont, 481 NE2d 849, 853 (IllAppCt 1985) (noting expert testimony that common walls often reduce the fair market value of a building). Moreover, the circuit court mentioned that Taxpayer offered no testimony, expert or otherwise, to the contrary. In addition, the validity of the assessment is supported by the closeness in proximity between Directorâs valuation under the âincome approachâ ($115,576) and the âreplacement cost approachâ ($119,424). 
[Â¶12] Taxpayer failed to cite authority for the statement that â[a] recent sale between a willing buyer and a willing seller must be given weight in determining the tax assessment.â It is well established that the â[f]ailure to cite authority violates SDCL 15-26A-60(6) and constitutes a waiver of that issue.â State v. Phillips, 489 NW2d 613, 616 (SD 1992). Taxpayer cites only to Willow, Inc. v. Yankton County, which states that a recent sale should not be âentirely excluded from consideration.â 89 SD 643, 650, 237 NW2d 660, 664 (1975). However, Willow, Inc. is distinguishable because the 1993 sale in this case was not entirely excluded from consideration. Director considered the sale, but determined it distorted the true value of the buildings. 
[Â¶13] Contrary to Taxpayerâs assertions, there is authority stating that â[a] single sale of property ... does not ordinarily determine true and full value of a property as there may be economic conditions of a temporary nature and other factors which prevent the same from being a true measure of value.â Sheraton-Midcontinent Corp. v. County of Pennington, 77 SD 554, 560, 95 NW2d 892, 896 (1959). See also Willow, Inc., 89 SD at 647, 237 NW2d at 662 (stating great weight should not always be given to a sale). 
[Â¶14] Even more compelling is that Taxpayer failed to offer an appraisal different from Directorâs valuation via expert testimony or otherwise. According to Lincoln Township, âWithout an appraisal showing [Directorâs] assessment was erroneous, [Taxpayer has] not overcome the presumption of correctness.â 1996 SD 13, at Â¶26, 543 NW2d at 260; see also Brookings Assocs., 482 NW2d at 882 (Wuest, J., dissenting). Simply asserting that the valuation was in excess of the true and full value does not make it so. Cf. Baatz v. Arrow Bar, 452 NW2d 138, 142 (SD 1990) (noting that merely stating that a corporation is undercapitalized does not make it so). Taxpayer must demonstrate that the tax assessment was unjust and inequitable. See Knodel, 269 NW2d at 389 (holding, âEven if the director of equalization fails to fully comply with statutory mandates, rendering the assessment void, a taxpayer cannot avail himself of such invalidity without also showing that the tax levied was unjust and inequitable.â). 
[Â¶15] We emphasize the lack of evidence and authority presented by Taxpayer, as well as our deference to the circuit courtâs determination of credibility of the witnesses and the weight to be accorded their testimony. See, e.g., Kost v. Kost, 515 NW2d 209, 212 (SD 1994). The circuit court was not clearly erroneous in finding Taxpayer did not meet his burden of presenting sufficient evidence to show that Director failed to act in accordance with the law, or to overcome the presumption that Directorâs assessment is valid. 
[Â¶16] II. Failure to Use Economic Obsolescence. 
[Â¶17] Taxpayer also attacks Directorâs failure to use economic obsolescence when assessing the value of the property. [fn4]  The circuit court held Taxpayer failed to demonstrate the âproperty is either functionally or economically obsolescent to a degree that would render the 1995 appraisal unjust and inequitable.â The record clearly supports this conclusion, as Taxpayerâs witness even admitted economic obsolescence exists only in the absence of any âdemand for the property and a potential for other uses if the present use is not continued,â and such uses by the Post Office and ASCS are to be continued. Therefore, Taxpayerâs assertion regarding economic obsolescence is based on conjecture, which is insufficient to demonstrate the circuit court erred. 
[Â¶18] Affirmed. 
[Â¶19] SABERS and KONENKAMP, Justices, concur. 
[Â¶20] MILLER, Chief Justice, and GILBERTSON, Justice, dissent.
[Â¶21] GILBERTSON, Justice (dissenting). 
[Â¶22] I respectfully dissent. In my opinion, the uncontradicted record establishes that this property was unconstitutionally assessed in excess of its actual value. 
[Â¶23] 1. Sufficiency of the Evidence. 
[Â¶24] The material facts are not in dispute. In 1991, these two brick buildings were offered for sale by a local real estate broker to the public for $110,000. When six months passed with no results, the listing expired. It was then listed with a Pierre realty agency in February of 1992 at a reduced price of $76,000. When this failed to produce a sale or counteroffers, in December of 1992, the price was further reduced to $60,000. The record indicates that throughout this period the realty was advertised in area newspapers. 
[Â¶25] Later, four local individuals agreed to purchase the property for $60,000 subject to the condition that a long-term lease could be made with a current tenant, the Agricultural Stabilization and Conservation Service (ASCS). When ASCS refused to commit to a lease of any term, this proposed sale did not go through. 
[Â¶26] Finally, the current owners purchased the two properties on March 5, 1993, by a contract for deed for an amount of $53,750. At that point the properties had been continuously listed for sale to the public for one and one-half years. 
[Â¶27] There have been no improvements of any substance to the buildings, and they are in the same condition as of the date of purchase. The same tenants remain. Yet the County set the valuation of the two buildings at $119,424 for the 1995 assessment. Taxpayers state that they have no intention to use the buildings for anything but their existing purposes assuming the current tenants can be convinced to stay. County makes no claim that the buildings are not being currently used for their highest and best use. 
[Â¶28] Article XI, Section 2 of the South Dakota Constitution mandates âthe valuation of property for taxation purposes shall never exceed the actual value thereof.â There is a presumption that the valuation produced by the director of equalization is consistent with this requirement, and that to overcome this presumption, a taxpayer must show that the assessorâs âvaluationâ exceeds âthe actual value thereof.â Brookings Assocs. v. State Bd. of Equalization, 482 NW2d 873, 876 (SD 1992). 

The terms âactual valueâ and âtrue and full valueâ mean the âmarket valueâ of property to be assessed and market value has been defined as the price ... a purchaser willing but not obligated to buy would pay an owner willing but not obligated to sell, taking into consideration all uses to which the property is adapted and might in reason be applied. 
Roseland v. Faulk County Bd. of Equalization, 474 NW2d 273, 275 (SD 1991). 
[Â¶29] Here we have a sale of the property within a short period of time prior to the valuation made by the County. It was an armâs length transaction. Prior to the sale, the property was publicly advertised for sale by professional brokers who could not obtain a higher price than the ultimate sales price. Since the sale, there have been no changes to the property or its use. It still has the same tenants. In short, everything was the same on the date of the sale as it was on the date of assessment. Yet the Director of Equalization claims the property to be worth $119,424 rather than its sales price of $53,000. Why? 
[Â¶30] According to the Director of Equalization, she had three justifications for this difference. Her first observation is that the owners got a âgood dealâ when they purchased the property. Yet she does not contest that this same âgood dealâ was offered in varying amounts to the public for 18 months prior to the property being sold. Even the initial sales price of $110,000, which brought no buyers, was less than the Director of Equalizationâs valuation. 
[Â¶31] Second, the Director claims that the sale was not valid because there were party walls between the buildings and the Masons (a nonprofit organization) had a building in between the two buildings now in dispute. This makes no sense as during the entire time the two buildings were offered for sale and at the time of the sale, the same conditions existed. The Director further testified she believes the property to now be worth $119,424 although the party walls are still there, as are the Masons. 
[Â¶32] Finally, the Director states that by statute and directives of the Department of Revenue, she must consider all three methods of valuation: comparable sales, cost and income. These are recognized methods of arriving at a valuation where a direct method -- namely, a recent armâs length sale of the actual property with no subsequent changes to the property -- does not exist. [fn5]  As we said in an early case, Sheraton-Midcontinent Corp. v. County of Pennington, 95 NW2d 892, 896 (SD 1959): 

In assessing property, the statutory standard of âtrue and full valueâ must be adhered to. This as we have indicated is commonly construed to mean the amount a willing purchaser will pay a willing seller in an open market. If there is no market for property subject to taxation, it nonetheless must be assessed at its âtrue and full value.â If the market value method cannot be followed, the assessor in the performance of the duty that the law has imposed upon him must use such pertinent factors as replacement costs less proper deductions and income from the property in determining true and full value. 
See also Yadco, Inc. v. Yankton County, 89 SD 651, 237 NW2d 665 (1975). More recently we held that â[a]n assessment simply cannot exceed the value of the property; manuals, computers, and a goal to establish a tax valuation cannot be vaulted over constitutional, statutory and decisional law.â Brookings Assocs., 482 NW2d at 877. 
[Â¶33] This case is similar to Roseland, supra. There the taxpayers introduced three instances of armâs length sales of realty and compared them with the assessed value assigned the next year, which was around double the purchase prices. We held this evidence to overcome the presumption that the assessorâs valuations were correct. Likewise, here, the assessment machinery has gotten so engrossed in Marshall and Swift appraisal manuals and computer programs, various methods of valuation, outside consultants, etc., that it forgot the simple principle that if you recently bought property at an armâs length sale, there have been no changes in the property and surrounding conditions or the general market conditions, then the sale price is what the property is worth. [fn6]  Compare with Willow, Inc. v. Yankton County, 237 NW2d 660 (SD 1975) and Sheraton-Midcontinent, 95 NW2d at 896 (as to change of conditions since date of sale). Until the citizens of this State see fit to amend Article XI, Section 2 of our Constitution, that is all the property can be valued âfor taxation purposes.â [fn7]  
[Â¶34] 2. Failure to Use Economic Obsolescence. 
[Â¶35] I also respectfully dissent on Issue 2. I would hold that the Director of Equalization erred by failing to adequately consider economic obsolescence, which is a justification for a reduction in her assessed valuation of the disputed properties. 
[Â¶36] Recently in National Food Corp. v. Aurora County Bd. of Commârs, 537 NW2d 564, 568 (SD 1995), we defined this concept as âthe loss of value from outside causes, also known as locational obsolescence.â We further viewed the term as ââloss of value brought about by conditions in the neighborhood of a property causing loss of business.ââ Id. (quoting Yadco, Inc. v. Yankton County, 89 SD at 659, 237 NW2d at 670). 
[Â¶37] Here the Director of Equalization granted economic obsolescence consideration to residential property in Onida and to business property in Agar, the other town in Sully County. However, she refused to grant it to business property in Onida. 
[Â¶38] The Director supports her position in part by using so-called comparable sales, which turn out to be an old wooden liquor store built in 1919 which had recently been sold for $5,000, and the sale of four vacant commercial lots. The brick buildings in question in this appeal were not built until 1964. The trial court was correct to question this justification by viewing it as comparing apples with oranges. 
[Â¶39] There has not been a new business building constructed on the main street of Onida in the past twenty years. When three buildings burned down in 1991 or 1992, none were replaced. The town of 750 residents has a declining population base. 
[Â¶40] Undue weight was also given to the fact that the buildings were currently occupied by tenants. While this is important, it should also be re-emphasized that there was a buyer for the buildings at $60,000 if there were long-term leases in effect, but when the tenants would not consent to anything more than short-term leases, the offer to purchase was withdrawn. [fn8]  With the short-term tenants, a sales price of only $53,750 was possible. 
[Â¶41] Yet the Director testified it made no difference to her whether the lease was for one month or twenty years. It is clear from the record that should either or both of the current tenants vacate the buildings, the owners will find it difficult at best to secure a replacement tenant, let alone at the current rental rate. 
[Â¶42] For the above reasons, I respectfully dissent. 
[Â¶43] MILLER, Chief Justice, joins this dissent. 
Footnotes
fn1 . SDConstArt XI, Â§2, reads: 

To the end that the burden of taxation may be equitable upon all property, and in order that no property which is made subject to taxation shall escape, the Legislature is empowered to divide all property including moneys and credits as well as physical property into classes and to determine what class or classes of property shall be subject to taxation and what property, if any, shall not be subject to taxation. Taxes shall be uniform on all property of the same class, and shall be levied and collected for public purposes only. Taxes may be imposed upon any and all property including privileges, franchises and licenses to do business in the state. Gross earning and net incomes may be considered in taxing and all property, and the valuation of property for taxation purposes shall never exceed the actual value thereof. The Legislature is empowered to impose taxes upon incomes and occupations, and taxes upon incomes may be graduated and progressive and reasonable exemptions may be provided.
fn2 . A sale was considered, but rejected, because the property was not comparable due to the age and low quality of construction. 
fn3 . In addition to Shirley Barber, the Director of Equalization for Sully County, Lyle Wendell, who is involved in the mass appraisal business, testified that a common wall may cause a reduction in the value of property. 
fn4 . Economic obsolescence means, âLoss of desirability and useful life of property due to economic developments (e.g. deterioration of neighborhood or zoning change) rather than deterioration (functional obsolescence).â Blackâs Law Dictionary 513 (6thEd 1990).
fn5 . SDCL 10-6-33 provides in part that â[t]he true and full value shall be determined by appropriate consideration of the cost approach, the market approach and the income approach to appraisal.â The key words are âappropriate considerationâ not âblind adherenceâ especially in the face of an armâs length sale. Appraisals are essentially an âestimateâ or âevaluationâ as to value by a person trained in the field, based on recognized underlying factors, but still only that. See State Highway Commân v. Black, 417 P2d 750, 752 (Wy 1966) and Blackâs Law Dictionary 129 (4th ed 1968). 
The ultimate accuracy of such subjective opinions will be determined in the marketplace at such time as there is an actual armâs length sale. Here that has already been done. How can the value of a piece of property be established by such an educated guess as against an actual sale between a willing seller and buyer in a public market where there is no dispute there have been no changes in the property since the sale? Appraisers are expert witnesses and subject to the same evidentiary limitations as other experts who offer their opinions to assist the court in its fact-finding duties. 

This state is not a trial-by-expert jurisdiction. The value of the opinion of an expert witness is no better than the facts upon which it is based. It cannot rise above its foundation and proves nothing if its factual basis is not true. It may prove little if only partially true. 
Bridge v. Karlâs Inc., 538 NW2d 521, 525 (SD 1995) (citations omitted).fn5
fn6 . Just how far the correct concept has been depreciated in favor of blind reliance on manuals was clearly borne out in the examination of the Director of Equalization by the trial court: 

Q: And if that property sold four more times in the next two years for between $50,000 and $60,000 and you had no reason to think anybody was cheating, would that affect your valuation of the property? 
A: There again, the common wall and the exempt portion of the building still remains there. I think I would still put it in as a reject sale and not use it. .. . 
Q: Thatâs because your sales ratio was at a hundred percent? 
A: Yes. (tr 102-3)
fn7 . I respectfully dissent from the majority holding that â[t]axpayer failed to cite authority for the statement that â[a] recent sale between a willing buyer and a willing seller must be given weight in determining the tax assessment.ââ Taxpayer cited to Article XI, Section 2 of the Constitution of the State of South Dakota; Willow, 237 NW2d at 664, and Roseland, 474 NW2d at 276 (Henderson, J., concurring specially): 

Rather, the domineering dictates of the South Dakota Department of Revenue, as exemplified by the correspondence in this file, was elevated over the State Constitution and the previous decisions of the South Dakota Supreme Court. Also, and regretfully, the circuit court became caught up in scientific, bookworm, technical construction of land values by an assessment âBibleâ which led the trial court astray. I hope, for the sake of all South Dakota citizens, that the circuit court judges of this state begin to realize that statutes cannot change our State Constitution; that manuals cannot change our State Constitution; that assessment formulas cannot change the State Constitution. 
Id.
fn8 . The continued occupancy by the ASCS is the most tenuous. ASCS operates on an annual lease and refused to extend it for any greater period of time. It has also given serious consideration to building its own building in Onida or re-locating outside the county as a consolidation move. The lease with the Postal Service is more long term as it runs for five years. However, it will expire in 1999. The owners felt the lack of a long-term tenant was significant enough that based solely upon that fact, at the time they purchased the property, they allocated the purchase price by assigning a value of $16,250 to the ASCS building and a value of $37,500 to the Post Office building. The owners were not without expertise in this area, as one is a long-time banker in Onida who also held a real estate license.