1998 SD 74

**CLARKSON AND COMPANY and William Clarkson and Shirley Clarkson, Appellees,**

v.

**HARDING COUNTY, Appellant.**

No. 20265.

Supreme Court of South Dakota.

Considered on Briefs June 1, 1998.

Decided July 8, 1998.

Kenneth E. Barker, Michael C. Loos, of Quinn, Eiesland, Day & Barker, Belle Fourche, for appellee.

Robert A. Haivala, Harding County State's Attorney, Buffalo, for appellant.

KONENKAMP, Justice.

[¶ 1.] In appraising agricultural real estate, are long-term conditions impairing livestock growth and reproduction, such as oil well facilities on grazing land, a valid factor in valuation? Because statutes controlling the assessment of agricultural land require consideration of the capacity of the land to produce agricultural products, including livestock, this factor justified a lower valuation than the one given by the taxing authorities. The circuit court's order upholding a reduced assessment is affirmed.

### Facts

[¶ 2.] Clarkson & Co. and William and Shirley Clarkson (Clarksons) operate a sheep and cattle ranch in Harding County, where they own approximately 7,100 acres and lease another 3,600 acres. Deployed across most of this property are sixty oil wells with attendant storage tank batteries, twenty-nine miles of service roads, and other oil facilities. Having no mineral rights, the Clarksons hold no financial interest in the oil produced, but receive compensation for the placement of the wells on their property and recompense if damage occurs to their land or livestock. By recent geological estimates, oil production

will continue there for another forty to fifty years.

[¶ 3.] The Harding County Director of Equalization valued the land at $42.99 per acre, for a total of $488,040, based on soil values.[1] In performing the valuation, the Director did not consider the presence of active oil operations and any resultant decreases in livestock production. At the time, the Clarksons ran approximately 1,000 head of breeding ewes and 400 head of cattle. Based on averages over a period of years, these numbers represented a reduction in their normal livestock carrying capacity by fifteen percent on sheep and twenty-five percent on cattle. The Clarksons appealed the valuation to the Office of Administrative Hearings. They offered evidence that problems associated with the oil fields, including noise, water pollution, dust, spillage, and the release of certain toxic chemicals, reduced livestock productivity on their ranch. As part of their case, they submitted a report from a veterinarian specializing in livestock reproduction, Dr. Ralph Miller, who indicated that the conception rates of the cows and ewes and the weaning weights of the calves and lambs were markedly lower on Clarksons' property when compared with livestock on neighboring land having no active oil operations. In the veterinarian's opinion, the stress on the animals created by oil field activity, including loud noise, heavy traffic, and dust, led to these consequential differences in conception rates and weight gains. Thus the land's capacity to sustain livestock was diminished.

[¶ 4.] The hearing examiner, Robert K. Krogstad, concluded the Clarksons overcame the assessment's presumption of correctness

and valued the subject property at $40 per acre across the whole unit, for a total of $428,486. Harding County then appealed to the circuit court. At first, the court proceeded with a de novo trial, but later determined that as this was an administrative appeal, it should have been resolved in accordance with the provisions set forth in SDCL ch 1–26.[2] Under either procedure, the court decided the result would be the same and upheld the hearing examiner's ruling. On appeal before us, Harding County contends the circuit court erred in affirming the hearing examiner's decision to decrease the valuation of the Clarkson property.

### Standard of Review

[¶ 5.] This is an appeal of a tax assessment pursuant to SDCL 10–11–43 and thus it is governed by SDCL ch. 1–26.[3] Under SDCL 10–11–42.1, the hearing examiner tries the issues de novo, then on appeal both the circuit court and this Court review that decision as set forth in SDCL 1–26–36. This review standard requires us to accord great weight to the findings and inferences made by the hearing examiner on factual questions. *Sopko v. C & R Transfer Co., Inc.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228; *Helms v. Lynn's, Inc.*, 1996 SD 8, ¶¶ 9–10, 542 N.W.2d 764, 766; *Finck v. Northwest Sch. Dist. No. 52–3*, 417 N.W.2d 875, 878 (S.D.1988). "We examine agency findings in the same manner as the circuit court to decide whether they were clearly erroneous in light of all the evidence." *In re Northwestern Bell Tel. Co.*, 382 N.W.2d 413, 415 (S.D.1986). We will only reverse "if after a careful review of the entire record[,] we are definitely and firmly convinced a mistake has been committed...." *Spitzack v. Berg Corp.*, 532

1. Although the Director attempted a market approach, there were insufficient comparable sales for clear guidance.

2. Following the Director's assessment, this matter was first heard by the Harding County Commission, sitting as the Harding County Board of Equalization. The Clarksons then appealed to the Office of Hearing Examiners. Following an adverse ruling, the County thereafter appealed to the circuit court pursuant to SDCL 10–11–43, which provides in part that "[t]he appeal shall be taken and conducted pursuant to the provisions of chapter 1–26." SDCL 1–26–35 states in part,

"[a] trial de novo shall not be granted unless otherwise authorized by law...." With this procedural background, no provision justified anything other than a review in accordance with the provisions of SDCL ch. 1–26.

3. If the appeal had been directly to the circuit court pursuant to SDCL 10–11–44, as opposed to first appealing to the Office of Hearing Examiners, then the circuit court would have been required to hear the case de novo, the same as an appeal from a decision of county commissioners as provided in SDCL 7–8–30 and 7–8–31. SDCL 10–11–45.

N.W.2d 72, 75 (S.D.1995)(citing *Day v. John Morrell & Co.*, 490 N.W.2d 720, 723 (S.D. 1992)). Questions of law remain fully reviewable. *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357 (S.D.1992); *Egemo v. Flores*, 470 N.W.2d 817, 820 (S.D.1991).

### Analysis and Decision

■■■ [¶ 6.] Two presumptions accompany tax valuations:

First, there is a presumption that tax officials will do their duty in accordance with the law and [will] not act unfairly and arbitrarily regarding the assessment of property. Second, there is a presumption that the county director of equalization's valuations are correct.

*Lincoln Twp. v. South Dakota Bd. of Equalization*, 1996 SD 13, ¶ 5, 543 N.W.2d 256, 257 (citing *Hutchinson Cty. v. Fischer*, 393 N.W.2d 778, 782 (S.D.1986)) (citations omitted). When contesting a valuation, the taxpayer bears the burden of overcoming the presumption of correctness. *National Food Corp. v. Aurora Cty. Bd. of Comm'rs*, 537 N.W.2d 564, 568 (S.D.1995); *Roseland v. Faulk Cty. Bd. of Equalization*, 474 N.W.2d 273, 275 (S.D.1991); *Mortenson v. Stanley Cty.*, 303 N.W.2d 107, 110 (S.D.1981). "Specifically, [the][t]axpayer 'must produce sufficient evidence to show the assessed valuation was in excess of true and full value, lacked uniformity in the same class[,] or was discriminatory.'" *Richter Enter., Inc. v. Sully Cty.*, 1997 SD 61, ¶ 7, 563 N.W.2d 841, 843 (citations omitted).

[¶ 7.] SDCL 10–6–33.1 provides the statutory guidelines for assessing agricultural land.

The true and full value in money of agricultural land, as defined by § 10–6–31, which has been in primarily agricultural use for at least five successive years immediately preceding the tax year for which assessment is to be made shall be the market value as determined for each county through the use of all comparable sales of agricultural land based on consideration of the following factors:

(1) The capacity of the land to produce agricultural products as defined in § 10–6–33.2; and

(2) The soil, terrain and topographical condition of the property including but not limited to capability, the land's use, climate, accessibility and surface obstructions which can be documented through an analysis of land selling prices;

The comparable sales that are used shall be evidenced by an instrument recorded with the register of deeds of the county in which the land is located, if the date of such instrument and the recording date is not more than two years prior to the assessment year.

SDCL 10–6–33.2 sets forth the framework to determine a property's capacity.

Capacity of land in agricultural use to produce agricultural products *shall* be based on average yields under natural conditions, in the case of land producing crops or plants, and on the average "acres per animal unit," in the case of grazing land; said average shall affect each operating unit and shall be based on the ten-year period immediately preceding the tax year in issue. In determining such capacity to produce, the county director of equalization and/or the county board of equalization must take into consideration yields, and/or carrying capacity, as determined by the soil conservation service, the agricultural stabilization and conservation service, the extension service, federal land bank and private lending agencies dealing with land production capacities.

(emphasis added).

■■■ [¶ 8.] "The statutory scheme embodied in SDCL 10–6–33.1 and –33.2 provides an objective method for assessing the value of agricultural lands based on constant and universal factors." In re *Butte Cty.*, 385 N.W.2d 108, 112 (S.D.1986). Features common to agricultural land, namely soil, terrain, topography, character of the area, market value, and capacity of the land to produce, furnish a uniform method for assessing value. *Id.* Subjective management decisions play no part in and should not be considered when assessing property value. *Mortenson*, 303 N.W.2d at 111 (citations omitted).

[¶ 9.] After reviewing the evidence, the hearing examiner concluded that the Di-

rector, in assessing the land's value, should have considered the adverse effect of active, large scale oil operations on the land's capacity to support and produce livestock.[4] The County maintains the hearing examiner erred because there exists no evidence in the record to support a finding of the land's diminished capacity and even if there were, the oil well sites occupy a small fraction of the ranch and only those acres should be reduced in value. These assertions overlook the uncontradicted testimony of William and Shirley Clarkson and the report of their expert, Dr. Miller, about the detrimental effect oil production had on their livestock. Dr. Miller studied the Clarkson livestock herds and reported that the conception rates and weaning weights of Clarksons' sheep and cattle were both lower compared to production on adjoining property with no active oil fields. He directly attributed this difference to the oil operations on the Clarksons' pasture land. Specifically, Dr. Miller concluded the loud noises, heavy traffic, and dust caused undue stress on the livestock, resulting in the loss of production. The actual area the well sites take up is only about 280 acres, but the hearing examiner obviously found their influence on livestock production spread beyond the mere acreage they occupy.

[¶ 10.] The Director testified that there were not sufficient sales in Harding County comparable with the Clarkson property, with its large scale oil operations. This Court was confronted with a similar problem in *West Two Rivers Ranch v. Pennington Cty.*, 1996 SD 70, ¶ 26, 549 N.W.2d 683, 688, where we stated:

> It is clear ... that there were not sufficient sales in Pennington County which were comparable with the subject property.... Consequently, no adjustment was made in valuation that considers the

Ranch's landlocked situs. While inaccessibility is but one factor to be considered under SDCL 10–6–33.1, it is this factor which significantly affects use of the property and its capacity to produce....

Like inaccessibility in *West Two Rivers*, here, the factor of oil production on the land significantly affects use of the real estate and its capacity to produce. This is no transient burden; it will continue at least another forty to fifty years.[5]

[¶ 11.] We have consistently held that because "[e]xact uniformity and mathematical accuracy in valuations are absolutely impossible, there must [instead] be substantial compliance with the legislative directives on valuation of agricultural property." *Kindsfater v. Butte Cty.*, 458 N.W.2d 347, 350 (S.D. 1990); *Codington Cty. Bd. of Com'rs v. South Dakota Bd. of Equalization*, 433 N.W.2d 555, 558–59 (S.D.1988). Here, the Director relied on the Harding County soil surveys in assessing the value of Clarksons' property, a valid consideration, but only one of the factors enunciated in SDCL 10–6–33.1.[6] Considering the evidence presented and the unique features the Clarkson property possesses, we cannot say the hearing examiner's reduction in value based on loss of productive capacity was clearly erroneous. The County's remaining assertions of error lack sufficient merit for discussion.

[¶ 12.] Affirmed.

[¶ 13.] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.

---

4.  As of the time of the appeal to the circuit court, there had been no other assessment appeals in Harding County claiming the same problems the Clarksons asserted.

5.  The County maintains the value of the Clarkson property has not been affected because the oil companies purportedly reimburse Clarksons for loss of agricultural production. The oil companies, however, only reimburse the Clarksons for the actual losses to land and livestock sustained.

They have not been reimbursed for any associated loss in production attributable to the oil operations.

6.  Harding County does not allege that the hearing examiner disregarded the average "acres per animal unit" measure in SDCL 10–6–33.2 to assess the capacity of the land to produce agricultural products.